UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN FREYTAG,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.

Case No. 15-cv-13569

Honorable Victoria A. Roberts

Magistrate Judge Mona K. Majzoub

_____/

| | |
|---|---|
| GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.<br>By:  David A. Kotzian (P38308)<br>30500 Northwestern Highway<br>Suite 425<br>Farmington Hills, MI 48334<br>(248) 737-9991<br>dkotzian@gmgmklaw.com<br><br>*Counsel for Plaintiff* | KIENBAUM OPPERWALL<br> HARDY & PELTON, P.L.C.<br>By:  Elizabeth P. Hardy (P37426)<br>       Thomas J. Davis (P78626)<br>280 N. Old Woodward Avenue<br>Suite 400<br>Birmingham, MI  48009<br>(248) 645-0000<br>ehardy@kohp.com<br>tdavis@kohp.com<br><br>*Counsel for Defendant* |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

## Table of Contents

Table of Authorities ................................................................................................. ii

Introduction ............................................................................................................. 1

I. Freytag's May 2014 disability was accommodated, and he has no proof that he was disabled in December 2014. .......................................... 1

II. Freytag's proposed transfer in violation of the CBA is unreasonable. ...................................................................................................... 4

III. Freytag's request for a transfer to work closer to home is unreasonable. ...................................................................................................... 7

## Table of Authorities

**Cases**

*Brumfield v. City of Chi.*,
   735 F.3d 619 (7th Cir. 2013)...............................................................................2

*Dunderdale v. United Airlines, Inc.*,
   807 F.3d 849 (7th Cir. 2015) ............................................................................4, 5

*Gilday v. Mecosta Cty.*,
   124 F.3d 760 (6th Cir. 1997)...............................................................................2

*Kleiber v. Honda of Am. Mfg., Inc.*,
   485 F.3d 862 (6th Cir. 2007) ...............................................................................3

*Majors v. Gen. Elec. Co.*,
   714 F.3d 527 (7th Cir. 2013 ................................................................................3

*Medrano v. City of San Antonio, Tex.*,
   179 F. App'x 897 (5th Cir. 2006) .........................................................................5

*Regan v. Faurecia Auto. Seating, Inc.*,
   679 F.3d 475 (6th Cir. 2012) ...............................................................................7

*U.S. Airways v. Barnett*,
   535 U.S. 391 (2002) ........................................................................................4, 6

**Statutes**

42 U.S.C. § 12112(b)(5)(A)....................................................................................2

ADA Amendment Act of 2008, Pub. L. 110-325.....................................................7

**Introduction**

Plaintiff Freytag substantively admits *every* material fact in Ford's brief: He was diagnosed with a temporary mental condition in May 2014; Ford accommodated him with medical leave; by November 2014, he was certified to return to work with a diagnosis of "mild and improving" stress; and that his doctors did *not* certify that he was unable to work in California. He nonetheless made an unsupported disability claim in an attempt to get a transfer to Michigan that would have violated the seniority rights of other workers. *See* Dkt. 32, Opposition Br. ("Opp.") at 1-4, ¶¶ 11, 17-18, 22-23, 32, 34-37. Summary judgment is warranted.

I.   **Freytag's May 2014 disability was accommodated, and he has no proof that he was disabled in December 2014.**

Freytag concedes that Ford reasonably accommodated him with medical leave during the time his doctors said that he could not work. Opp. 20. The only disputed issue, then, is whether Freytag can establish that he was "disabled" *after* his doctors cleared him to return to work—*i.e.*, when he requested a transfer under the ADA in December 2014. *See* Dkt. 28, Br. 14-16.

He cannot do so. Freytag effectively admits that the claim he made in his ADA request—that his doctors believed his disability would recur if he returned to work in California—was not true. *None* of his doctors ever provided contemporaneous documentation to that effect (*see* Opp. 2, admitting Fact 23), and even now Freytag provides no such medical evidence, citing only unspecific hearsay about

what his doctors allegedly "advised." *See* Opp. 9. Indeed, he admits that his last doctor's visit prior to making his ADA request resulted in a diagnosis of "mild and improving" stress—*not* an alleged episodic depression that would limit him to working in Michigan.[1] Opp. 2, 3 (admitting Facts 18, 25). Moreover, regardless of his medical status when he made his December 2014 ADA request, Freytag's claim still fails because he admittedly did not provide Ford with medical documentation substantiating that disability. *See* Br. 14-16; Opp. 2 (admitting Fact 23.)

Freytag's response is twofold. *First*, he claims that Ford only required substantiation of disability if he wanted medical leave, but not some other accommodation. Opp. 22-23. This *post-hoc*, deliberately obtuse reading of Ford's notice should be rejected. Ford's notice discussed medical leave because, *in context*, it was prompted by Freytag's overstaying his leave. *See* Br. 15-16; Fact 20. But Freytag unqualifiedly admits that the notice told him that "if he could not return [to work] due to a disability, that he needed to provide 'satisfactory evidence' of his disability," *and* that he "understood the notice to mean that he could return to Sacramento, and that if he did not, he needed to provide evidence of his disability or else he would be terminated." Opp. 2 (admitting Facts 20-21.) He further admits

---

[1] Freytag also argues that his "record of disability" entitles him to accommodation. Opp. 10. Not so. The ADA only requires accommodation of actual disabilities—*i.e.*, "known physical or mental limitations." *Brumfield v. City of Chi.*, 735 F.3d 619, 632-33 (7th Cir. 2013) (citing 42 U.S.C. § 12112(b)(5)(A)); *Gilday v. Mecosta Cty.*, 124 F.3d 760, 764 n.4 (6th Cir. 1997) ("record of disability" insufficient as a "person without an actual disability would not need any accommodation.").

that his union reiterated this obligation *after* he submitted his unsubstantiated ADA request. Opp. 3 (admitting Fact 26.) He was aware of his obligations.

*Second*, Freytag blames Ford for his own failure to substantiate, arguing that the ADA allows him to make an unsupported claim of "recurring" disability, and that it is *Ford's* duty to hound him for substantiation under the "interactive process." Opp. 23-24. But the interactive process is meant to determine an appropriate accommodation, and thus presupposes that the employee has established his disability *and* requested a reasonable accommodation.[2] Neither occurred here. But even if the process had been triggered, any "breakdown" falls on Freytag. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) ("When a party obstructs the process or otherwise fails to participate in good faith, courts should attempt to isolate the cause of the breakdown and then assign responsibility.")

Here, Freytag knew that he had to substantiate his claim that his disability would "recur" in California. He knew that the paperwork he referenced said no such thing—and, indeed, that his doctors made no such diagnosis. And even after his union again told him to submit paperwork, he did not. Freytag's suggestion that Ford is to blame for his failure to substantiate his "recurring" disability claim—a claim he *still* does not substantiate—should be rejected.

---

[2] *See* Br. 16 & n.3; *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 (7th Cir. 2013) (when the employee has not established she is a "qualified individual with a disability," whether "the discussion… was sufficiently interactive is immaterial.")

## II. Freytag's proposed transfer in violation of the CBA is unreasonable.

Freytag's claims also fail because, as he admits, he was ineligible to transfer under the CBA. Opp. 3 (admitting Fact 32.) He further admits that if he transferred, he would bump down all other employees at those plants who had less seniority, disadvantaging them, including by increasing their susceptibility to layoffs. *Id.* at 3-4 (admitting Facts 34-35.) Freytag's responses are unavailing.

His primary argument rests on the "special circumstances" exception of *U.S. Airways v. Barnett*, 535 U.S. 391, 405 (2002). He claims that his transfer would not "require another employee to be displaced" because no layoffs were pending, and it is "speculative" to think that his transfer would cause someone to lose their job in the future. Opp. 15-16. This is wrong as a factual matter, as Freytag's transfer *inevitably* would displace the rights of existing employees and increase susceptibility to layoffs. *See* Fact 35. But it also misconstrues the "special circumstances" exception, which turns on employee *expectations* of "consistent, uniform treatment." 535 U.S. at 404-05; *e.g.*, *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 855 (7th Cir. 2015) ("special circumstances exist when the facts show that the employer does not maintain a consistent and uniform seniority system on which employees rely.") It is Freytag's burden to show *that* sort of circumstance. He does not.

Here, Freytag admits that Ford and the UAW collectively bargained specific, limited rules regarding when transfers could occur, in a careful attempt to balance

-4-

the competing seniority rights of employees. Opp. 4 (admitting Fact 36). He admits that his proposed transfer was *not* one contemplated by these rules, and he has no evidence that anyone else transferred in derogation of those rules. Opp. 3-4 (admitting Facts 32, 37.) Thus, he has not shown "special circumstances" suggesting that UAW employees cannot expect Ford to honor the bargained transfer rules, and that they should expect to be bumped in seniority despite those rules. *See* Br. 18-21; *Dunderdale*, 807 F.3d at 855 (no "special circumstances" absent "evidence of global disregard for the seniority system" or specific provision at issue); *Medrano v. City of San Antonio, Tex.*, 179 F. App'x 897, 903-04 (5th Cir. 2006) (same).

Similarly, his suggestion that the CBA permitted his transfer—a claim he has affirmatively waived, Dkt. 12, Pg ID 165—is wrong. Freytag admits that the CBA precluded him from *any* further transfers for 36 months. Opp. 3 (admitting Fact 32.) That alone demonstrates that, were he to transfer, he would do so in violation of the CBA. Freytag's only response is that this 36-month provision is a "prospective waiver" of his ADA rights (Opp. 6-7). That is spurious. Freytag did not waive his right to accommodation; indeed, Ford *did* accommodate him, with medical leave, after the 36-month provision took effect. But case law makes clear that the terms of a CBA can *limit* the form of accommodation that otherwise might be reasonable, which is what this provision does. *See* Br. 17-18. Freytag's "prospective waiver" argument is merely a disguised attack on that well-established authority.

Further, even if the 36-month blanket ineligibility was lifted, Freytag admits that he was also ineligible for transfer under the preferential placement rules. Opp. 3 (admitting Fact 32.) Freytag argues that Ford might have transferred him nonetheless, citing other CBA provisions. In fact, none of the provisions he cites authorizes inter-plant transfers in derogation of the preferential placement rules.[3] More importantly, one does not show "special circumstances" by pointing to a theoretical loophole by which management could strong-arm a transfer through; if so, *Barnett* would have come out the other way because management unilaterally imposed the seniority rules in that case. 535 U.S. at 404. Rather, the question is one of *expectations*, and Freytag offers no evidence that Ford exercises its purported authority to transfer employees between plants in a way that might undermine employee expectations of uniform treatment under the CBA's preferential placement transfer rules.

Finally, his claim that the union did not "block" the transfer (Opp. 17) is untrue; while the local union submitted Freytag's appeal, transfer eligibility is determined by the *national* NJSOESC committee. *See* Dkt. 32-4, Pg ID 84, Roberson Dep. 37; Dkt. 28-4, Pg ID 562. Both the Ford and UAW representatives on the NJSOESC agreed that transfer was not authorized. Dkt. 28-2, Pg ID 525.

---

[3] Freytag's Exhibit P is a generic anti-discrimination policy statement that does not govern transfers; in any event, as the case law shows (Br. 17-18), it is not "discriminatory" when collectively-bargained rules limit available accommodations. Exhibits Q and R, to the extent they implicate inter-plant transfers, are facially inapplicable when, as here, specific rules governing transfers apply. And Exhibit S, on its face, applies to transfers to different jobs within the *same plant*.

III. **Freytag's request for a transfer to work closer to home is unreasonable.**

As Ford showed, Freytag's requested relief is *no different* in substance from an employee who wants a transfer for a shorter commute—in both cases, what is demanded is a workplace closer to the employee's home, for the purpose of alleviating an alleged disability. Br. 21-24. The Sixth Circuit found these commuter requests unreasonable as a matter of law, *see Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 480 (6th Cir. 2012), and the same result should follow here. Freytag has no effective rebuttal, arguing only that *Regan* applied pre-2008 ADA law, without explaining why that matters.[4] Opp. 18-19. He also tries to distinguish other cases on their facts, but ignores the key *legal* point: it is unreasonable to ask for an accommodation that has nothing to do with the workplace, and primarily offers benefits off-the-job. That is what Freytag wants, and it is unreasonable.

Respectfully submitted,

s/Thomas J. Davis
Elizabeth P. Hardy (P37426)
Thomas J. Davis (P78626)
KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com

Dated:  July 26, 2016              tdavis@kohp.com

---

[4] In fact, the amendments primarily redefine the term "disability," and do not implicate the Court's reasonable-accommodation ruling. *See* Pub. L. 110-325.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 26, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties on record.

                                         *s/Thomas J. Davis*
                                         Thomas J. Davis
                                         Kienbaum Opperwall Hardy
                                            & Pelton, P.L.C.
                                         280 N. Old Woodward Avenue, Suite 400
                                         Birmingham, MI  48009
                                         (248) 645-0000
                                         tdavis@kohp.com
                                         (P78626)